**Rolando REBULL, Plaintiff,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security Defendant.**

**No. 00 Civ. 9774(VM).**

United States District Court, S.D. New York.

Dec. 30, 2002.

Christopher James Bowes, Center for Disability Advocacy Rights, Inc., New York City, for plaintiff.

John E. Gura, Jr., U.S. Atty., New York City, for defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Rolando Rebull ("Rebull") brings this action under sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final determination of the Commissioner of Social Security (the "Commissioner") denying his Application for Supplemental Security Income dated October 15, 1996 (the "Application") filed with the Social Security Administration (the "SSA") pursuant to Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* Rebull alleges errors entitling him to a new administrative hearing. The Commissioner disagrees. Rebull and the Commissioner have filed a motion and cross-

motion, respectively, for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Rebull's motion is DENIED and the Commissioner's motion is GRANTED.

## I. BACKGROUND

Rebull filed his Application at the age of 58.[1] He is a Cuban immigrant who came to the United States in 1956 at the age of 18. Rebull worked steadily from 1956 through 1985, generally as a bartender or waiter, and, in these years, he married and had a child. He continued to work with some irregularity through 1990 but has not worked since then.

Rebull has been diagnosed with panic disorder with agoraphobia by Dr. Fiona Graham of the Metropolitan Center for Mental Health in New York, New York ("MCMH"). He enrolled at MCMH on October 11, 1996 for treatment for anxiety associated with conditions including distanced travel and crowded busses, subways, and elevators, that he believed impaired his ability to commute sufficiently for purposes of employment. He also filed his Application on this basis on October 15, 1996.

Rebull received counseling and drug therapy at MCMH consisting of Anafranil, and his condition improved as a result. His panic attacks ended and his anxiety became less intense. By April 1998, he no longer took Anafranil regularly and experienced no relapse in his condition. In September 1998, Rebull discontinued treatment and was officially discharged the following month. MCMH records, including Dr. Graham's treatment notes,

were submitted to the SSA for consideration as it reviewed Rebull's Application.

Rebull filed his Application on October 15, 1996 with the SSA. On December 27, 1996, the SSA denied Rebull's Application. Rebull requested a reconsideration, which was denied on June 23, 1997. Rebull then requested an administrative hearing, which was conducted before Administrative Law Judge Mark Sochaczewsky (the "ALJ") on May 19, 1998. An attorney was appointed to represent Rebull at this hearing. After considering the evidence, including Rebull's testimony, MCMH records that included Dr. Graham's treatment notes, and reports from SSA consulting physicians Alain DelaChapelle and Ellis Charles, the ALJ concluded in a Decision dated July 29, 1998 (the "SSA Decision")[2] that Rebull suffered from a psychiatric condition but nonetheless possessed the residual functional capacity to perform past relevant work. Accordingly, the ALJ concluded that Rebull was not entitled to supplemental social security income. This disposition became final when the SSA Appeals Council denied Rebull's request for further administrative review on October 19, 2000. Rebull seeks from this Court judicial review of the Commissioner's determination, alleging errors entitling him to a new administrative hearing. The Commissioner disputes the existence of any such errors. For the reasons discussed below, Rebull's motion for judgment pursuant to Rule 12(c) is DENIED and that of the Commissioner is GRANTED.

## II. DISCUSSION

### A. LEGAL STANDARD

This Court reviews the findings and decision of the ALJ under the "substantial

---

1. Pursuant to 42 U.S.C. 405(g), the Commissioner filed as part of his answer to Rebull's complaint a certified copy of the administrative record (hereinafter "R."), from which the present recitation of facts is derived. Additional citations appear as necessary.

2. The SSA Decision is reprinted in the administrative record at pp. 16–26.

evidence" standard. *See* 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420 (citation omitted). If the Court finds that there is substantial evidence to support the Commissioner's decision, that decision must be upheld, even if there also is substantial evidence for the plaintiff's position. *See DeChirico v. Callahan,* 134 F.3d 1177, 1182 (2nd Cir.1998); *Alston v. Sullivan,* 904 F.2d 122, 126 (2nd Cir.1990).

The Act defines "disability" as an
inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

42 U.S.C. § 423(d)(1)(A). The Second Circuit has explained that when assessing an applicant's claim, the ALJ must consider the following information: (1) objective medical facts and clinical findings; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability to which the claimant or others testify; and (4) the claimant's age, educational background, and work experience. *See Bluvband v. Heckler,* 730 F.2d 886, 891 (2nd Cir.1984); *Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2nd Cir.1983), *see also Morillo v. Apfel,* 150 F.Supp.2d 540, 545 (S.D.N.Y.2001).

The ALJ assesses an applicant's claim for supplemental security income according to a five-step process dictated by 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. If not, at step two, the ALJ asks whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to perform basic work activities. Third, if the ALJ finds a "severe impairment" that is listed in Appendix 1 of the SSA regulations, there is a presumption of disability. If the "severe impairment" is not contained in Appendix 1, the ALJ must determine whether the claimant has the residual functional capacity to perform past work. Finally, at step five, if the claimant is unable to perform past work, the ALJ determines whether there is other work that he is capable of performing. The claimant has the burden of proving the requirements of the first four steps and, if satisfied, the burden shifts to the Commissioner at step five. *See Perez v. Chater,* 77 F.3d 41, 46 (2nd Cir.1996).

Additionally, this case involves an issue of doctor credibility. The "treating physician" rule, applicable in such cases, requires the ALJ to accord more weight to the opinions of treating physicians if: (1) the treating source's opinion on the issue of the nature and severity of the plaintiff's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) is not inconsistent with the other substantial evidence in the record. If the ALJ does not give controlling weight to a treating source's opinion, the degree of weight will be determined based on factors that include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the medical source supported his opinion; (4) the degree of consistency between the opinion and the record as a whole; (5) whether the opinion is given by a specialist; and (6) other evidence which may be brought to the attention of the ALJ. *See* 20 C.F.R. § 416.927; *Schisler v. Sullivan,* 3 F.3d 563, 567–68 (2nd Cir.1993); *Alvarez v. Barnhardt,* No. 02 Civ. 3121, 2002 WL

31663570, at *7 (S.D.N.Y. November 26, 2002).

## B. *LEGAL STANDARD APPLIED*

### 1. *Residual Functional Capacity To Perform Past Relevant Work*

The ALJ in this case found that Rebull suffered from a severe mental condition but concluded that he nonetheless has a residual functional capacity to perform past relevant work. (SSA Decision at 3.) Rebull disputes this latter finding. There is evidence in the administrative record, both testimonial and documentary, indicating that Rebull was notably affected by his mental condition. The relevant determination, however, is whether this impact was extensive enough so as to prevent him from retaining gainful employment. This sort of determination involves a degree of judgment and discretion on the part of the fact-finder, as there will necessarily be some evidence of impairment in disputes such as that presented by the instant case. The question before the Court is whether the ALJ's judgment that Rebull's condition allows for a residual functional capacity to retain gainful employment is supported by substantial evidence. The Court concludes that it is.

█ The record provides ample evidence to support the ALJ's decision. Rebull enrolled himself for treatment at MCMH in October 1996, complaining of fear of crowds and anxiety which prompted him to quit his job as a waiter. (R. at 145–46.) When Rebull was evaluated for treatment at MCMH on November 14, 1996, psychological assessment indicated only a "moderate" impairment on the so-called Global Assessment of Functioning scale ("GAF"). (*Id.* at 144.) He soon began treatment comprising monthly therapy sessions with Dr. Graham and a drug regimen consisting of daily doses of Anafranil. (*Id.* at 144.)

The evidence in the record indicates that Rebull responded well to this treatment and that his condition improved. According to Dr. Graham's notes, at his January 16, 1997 therapy session Rebull reported to Dr. Graham that he "can go out quite a bit," and Dr. Graham concluded that he was "doing well on his medication." (*Id.* at 184.) At his April 10, 1997 therapy session, Rebull reported to Dr. Graham that "it is only rarely that he feels phobic such as when he is on a crowded elevator." (*Id.* at 181.) These notes further reflect that Rebull told Dr. Graham that he "would like to go back to work, and I [Dr. Graham] strongly encouraged him to do so." (*Id.*) Rebull stated to Dr. Graham at his June 5, 1997 therapy session that he "continues to feel much better. He says the only time that he gets a little anxious is when he goes through a tunnel to go see his daughter in New Jersey." (*Id.* at 179.) Dr. Graham noted that at Rebull's July 10, 1997 therapy session she asked Rebull "whether he thought he could work again and he said he definitely thought he could. The only thing holding him up was that his papers were stolen some time ago and he has no I.D. He seems quite confident to be able to do that and I think he can with the help of the Anafranil." (*Id.* at 178.)

Dr. Graham's notes from her September 4, 1997 session with Rebull indicate that Rebull "is looking for a job and has not been able to find one so far.... I think perhaps he would be better off with volunteer work even though he needs the money than sitting at home looking at the walls...." (*Id.* at 176.) She reiterated this conclusion in her notes from Rebull's March 5, 1998 session, at which time she indicated that he still had not been able to find a job. (*Id.* at 168.) On December 18, 1997 Dr. Graham indicated that Rebull continued "doing very well." (*Id.* at 173.)

Dr. Graham reported in the notes from Rebull's April 2, 1998 therapy session that

Rebull had experienced no panic attacks since he started taking Anafranil. (*Id.* at 167.) These notes also indicate that Rebull had stopped taking Anafranil regularly but still had not been suffering any panic attacks. (*Id.* at 167.) In her record of Rebull's final therapy session on August 20, 1998, Dr. Graham stated: "I think the very best thing for him would be to get a job and get out of his house." (*Id.* at 163.)

In her Medical Source Statement dated April 24, 1998 to the SSA ("Medical Source Statement"), Dr. Graham indicated that Rebull's condition "improved with medication and therapy." (*Id.* at 136.) Dr. Graham's Medical Source Statement was accompanied by an Assessment Of Ability To Engage In Work–Related Activities (Mental) form dated April 30, 1998 ("Assessment of Abilities Form") in which she stated that Rebull "is able to function well in a known setting." (*Id.* at 139.) Finally, in MCMH's Discharge Summary of Rebull dated October 14, 1998 ("Discharge Summary"), Dr. Graham stated that Rebull "was felling less anxious and he had been dealing with people much better than before. [Rebull] also was dealing better with stressful situations." (*Id.* at 170.)

Rebull's testimony at the administrative hearing also supports the ALJ's decision. For example, Rebull indicated that he could perform the job of a waiter or bartender and that he had applied for such a position but was told by the establishment that it was fully staffed. (*Id.* at 50–51.) He also testified that his mental condition prevented him from traveling much beyond ten blocks or so from his home, but he explained that if he were accompanied by a friend, he could travel further. (*Id.* at 43.) He also explained that he could travel further alone once he became familiar with a given route. (*Id.* at 43–44.)

In addition to Dr. Graham, who was Rebull's treating psychiatrist, Rebull was examined by a consulting psychiatrist, Dr. Alain DelaChapelle, on December 2, 1996. (*Id.* at 116.) Dr. DelaChapelle diagnosed Rebull with panic disorder without agoraphobia and with generalized anxiety disorder, but also reported: "In my opinion, patient has a satisfactory ability to understand, remember and carry out instructions, and a satisfactory ability to respond appropriately to supervision, co-workers, and work pressures in a work setting." (*Id.* at 117.) Also, on December 24, 1996, a SSA consulting physician, Dr. Ellis Charles, reviewed Rebull's medical records and concluded that the impact of Rebull's condition on his daily life and on his understanding, memory, concentration, social interactions, and ability to adapt is only "slight" to "moderate." (*Id.* at 125, 127–28.)

The Court concludes that the findings and decision of the ALJ, denying Rebull's application for supplemental security income, are supported by substantial evidence. The portions of the administrative record discussed above constitute an ample basis for this outcome.

### 2. *Dr. Graham's Medical Source Statement*

█ In spite of the contents of Dr. Graham's notes during Rebull's treatment at MCMH in which she repeatedly expresses the opinion that Rebull can and, indeed, should work, in her Medical Source Statement to the SSA, Dr. Graham takes the view that Rebull is not able to maintain gainful employment because he suffers from panic disorder with agoraphobia and, accordingly, cannot use elevators, enter crowded buildings, or travel far from his apartment.[3] (R. at 136.) In the accompa-

---

**3.** In the Assessment Of Abilities Form accompanying this Medical Source Statement, Dr.

Graham elaborates on her opinion by providing a more detailed breakdown of the symp-

nying Assessment Of Abilities Form, Dr. Graham adds that Rebull's anxiety impairs his ability to function in a work setting. (*Id.* at 138–39.) Rebull claims that the ALJ failed to accord due weight to these opinions. The Court disagrees with this claim.

The ALJ explained that

[a]s required by 20 C.F.R. § 416.927 [and other SSA regulations], the medical opinions of record have been considered in making this disability determination. Dr. Graham, the claimant's treating psychiatrist, finds the claimant to have marked limitations in his ability to perform such mental activities as following work rules, interacting with supervisors and co-workers, and dealing with work stress.... However, under the relevant Rulings and Regulations, no medical opinion can be given controlling weight unless it is supported by or consistent with the record as a whole. Dr. Graham's opinion is not supported by her own records or by other evidence.

(SSA Decision at 5.) While the ALJ did not explicitly reference the "treating physician" rule by that name, he did reference 20 C.F.R. § 416.927, which embodies this rule's requirements in regulatory form. He accordingly explained that Dr. Graham's opinion failed to satisfy these requirements insofar as it was unsupported by and inconsistent with the evidence as a whole, including her own treatment records. (*Id.* at 5, 6.) Rebull challenges the sufficiency of this finding. (Memorandum In Support Of Plaintiff's Motion For Judgment On The Pleadings dated October 18, 2001 ("Pl.Br."), at 17.)

As reasons for discrediting Dr. Graham's stated opinion, the ALJ relied on the contents of many of Dr. Graham's own treatment records recounted above, as well as on Rebull's own testimony during the

toms and consequences of Rebull's condition.

hearing. He also found persuasive the opinions of Dr. DelaChapelle and Dr. Charles, which, in the ALJ's assessment, showed "greater consistency" with this other evidence. (SSA Decision at 6.) The ALJ found particularly salient the initial reports indicating that, even before treatment, Rebull's condition affected him only moderately, combined with the fact that he showed prompt and sustained improvement from this moderate impairment with therapy and drug treatment. (*Id.* at 5.) Accordingly, the ALJ concluded: "Thus, although Dr. Graham's opinion has been considered in making this determination, it cannot be [given] significant weight since it is not supported by the evidence, including the claimant's own allegations." (*Id.* at 6.)

The Court disagrees with Rebull's claim that the ALJ's rejection of Dr. Graham's conclusion is unsupported by treatment records or other evidence and, indeed, that it is inconsistent with them and lacked a sufficient basis in the administrative record. The portions of the record recounted in Section II.B.1 *infra*, in the Court's discussion of the ALJ's finding of a residual capability to perform past relevant work, also support the ALJ's rejection of Dr. Graham's stated opinion regarding Rebull's ability to retain gainful employment. To review, this evidence indicates that, shortly after beginning treatment, Rebull felt considerably less anxious and stopped suffering panic attacks. (*See, e.g.,* R. at 181, 184.) The record shows that Rebull, despite his mental condition, is able to travel sufficiently for purposes of employment when either accompanied by another person or once the travel route becomes familiar. (*See, e.g., id.* at 43–44, 139.) The record also shows that not only did Rebull believe that he could work, but Dr. Graham repeatedly agreed, and even encouraged him to do so in the course of numer-

(R. at 137–39.)

ous sessions. (*See, e.g., id.* at 50–51, 178, 181.) The Court finds that these portions of the record together satisfy the "substantial evidence" standard and provide a sufficient basis for the ALJ's conclusion that Dr. Graham's stated opinion was not supported by the evidence and, indeed, was inconsistent with it.[4] *See* 20 C.F.R. §§ 416.927(b), (c)(2), and (d)(2).

### 3. *Followup Statement From Dr. Graham*

■ Rebull argues that the ALJ should have contacted Dr. Graham for an explanation of the apparent inconsistency between her opinion as reflected in the Medical Source Statement and her conclusions and other information contained in her treatment notes concerning Rebull. (Pl. Br. at 19–20.) The Court rejects this claim.

The Second Circuit has explained that "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record" and that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel...." *Rosa v. Callahan,* 168 F.3d 72, 79 (2nd Cir.1999) (citations omitted); *see* 20 C.F.R.

§§ 404.1512(d) and (e). A record that does not support a treating physician's opinion does not necessarily contain deficiencies or gaps, however. Here, there were no such gaps or deficiencies in the evidence.

Section 404.1512(d) requires the SSA to obtain documentation about a complainant's complete medical history and treatment for at least the twelve months preceding the filing of the application for benefits, absent an indication that the basis for the claimed benefits occurred earlier or later than the twelve month mark. Section 404.1512(d)(2) explains that "[b]y 'complete medical history,' we [the SSA] mean the records of your medical source(s)...." In this case, the record indicates that Rebull filed his benefits application on October 15, 1996, (R. at 148–50), that he began treatment for his mental condition on October 11, 1996, (*id.* at 115), and that there is no other documentation for the twelve month period preceding this filing or otherwise.[5]

Rebull did receive treatment while his Application was being reviewed and investigated by the SSA. This two-year psychiatric treatment history at MCMH was completely documented, and copies of these records were submitted to the SSA.

---

4. Rebull claims that the ALJ did not adequately articulate the basis for his decision not to accord Dr. Graham's opinion controlling weight. (Pl. Br. at 16.) The Court believes that the ALJ in fact did articulate such a basis, and to the extent his credibility analyses could have been developed more fully, the Court finds that the administrative record is adequate for the Court to review the proceedings below. *See Monguer v. Heckler,* 722 F.2d 1033, 1040 (2nd Cir.1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient ...." (citing *Berry v. Schweiker,* 675 F.2d 464, 469 (2nd Cir. 1982))).

5. Rebull visited MCMH for approximately two months in 1994 but stopped going because he concluded that the treatment he was receiving was unhelpful. (R. at 146.) He also reports having received psychiatric treatment at Roosevelt Hospital sometime from 1988 through 1990. (R. at 96.) No records from either period are available, (Pl. Br. at 3; Memorandum Of Law In Opposition To Plaintiff's Motion For Judgment And In Support Of The Commissioner's Cross–Motion For Judgment On The Pleadings dated December 21, 2001, at 4), and, accordingly, Rebull does not challenge the absence of such documentation as a basis for an incomplete administrative record of his medical history.

The SSA was further supplied with copies of Rebull's MCMH initial treatment evaluation form dated October 11, 1996,[6] as well as his Discharge Summary. The record also contained evaluations from two consulting physicians in addition to Rebull's treating psychiatrist, Dr. Graham, as well as testimony from Rebull himself as to his abilities and limitations. This evidence indicates that Rebull's medical history was adequately compiled and complete. *See* 20 C.F.R. §§ 404.1512(d) and (e); *Perez,* 77 F.3d at 47–48.

The discord between Dr. Graham's stated opinion and the evidence enumerated in Sections II.B.1 and 2 *infra* is more properly construed as a credibility issue rather than as an issue of the completeness of the administrative record. As the Second Circuit has explained, "[w]hile the opinions of a treating physician deserve special respect, . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record. . . ." *Veino v. Barnhart,* 312 F.3d 578, 588 (2nd Cir.2002) (citations omitted); *see e.g., Alston,* 904 F.2d at 126; *Bluvband,* 730 F.2d at 892–93. Here, the ALJ explicitly considered Dr. Graham's opinion but concluded that it was inconsistent with the evidence in the administrative record, including the opinions of Dr. DelaChapelle and Dr. Charles, and, consequently, accorded it less than "significant" weight for the reasons outlined in Section II.B.2 *infra.* According to the Second Circuit, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino,* 312 F.3d at 588 (citing *Richardson,* 402 U.S. at 399, 91 S.Ct. 1420). This aspect of the fact-finding function, a credibility determination, in essence, would be rendered nugatory if, whenever a treating physician's stated opinion is found to be unsupported by the record, the ALJ were required to summon that physician to conform his opinion to the evidence. Such a standard, in turn, would invite additional critique by the Commissioner in opposition and conceivably demand another recall of the treating physician, *ad infinitum.* Reasonable discretion in the assessment of the adequacy and completeness of the administrative record circumscribes this potential vicious cycle. For the reasons discussed above, the Court finds that the administrative record in this case adequately and completely reflected Rebull's medical history. Accordingly, it was not necessary for the ALJ to recontact Dr. Graham.

### 4. *Rebull's Subjective Complaints*

■ Rebull claims that the ALJ, in reaching his conclusions, failed to accord sufficient weight to Rebull's subjective complaints of restricted mobility and anxiety. (Pl. Br. at 18–19; Plaintiff's Reply Memorandum dated January 11, 2001 ("Pl. Reply Br."), at 6–7.) The Court is unpersuaded. In actuality, the ALJ explicitly states in the SSA Decision that "[c]onsideration must also be given to the claimant's subjective complaints using the standards in . . . 20 C.F.R. § 416.929(c)(3)," and proceeds to address Rebull's anxiety, depression, and feelings of panic as evoked by subways and elevators, crowded busses, and distanced travel. (SSA Decision at 4–5.)

Rebull accuses the ALJ of having "handpicked only those statements that would support the ALJ's conclusions. . . ." (Pl. Reply Br. at 6–7.) It is clear that the ALJ was more persuaded by those portions of Rebull's testimony and other statements that were consistent with the contents of Dr. Graham's treatment notes and other MCMH documents in evidence and with the reports of Dr. DelaChapelle and Dr. Charles. Attending to mutually corrobo-

---

6. This form is untitled. (R. at 145–47.)

rative evidence and trends in the record is a natural part of the fact-finding function. In this vein, § 416.929(c)(3) explains that

> [b]ecause symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which you, your treating or examining physician or psychologist, or other persons report, *which can reasonably be accepted as consistent with the objective medical evidence and other evidence,* will be taken into account as explained in paragraph (c)(4) [of 20 C.F.R. § 416.929]. . . .

20 C.F.R. § 416.929(c)(4) (emphasis added). Subsection 416.929(c)(4) provides in relevant part:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and *we will evaluate your statements in relation to the objective medical evidence and other evidence,* in reaching a conclusion as to whether you are disabled. We will consider *whether there are any inconsistencies* in the evidence and *the extent to which there are any conflicts* between your statements and the rest of the evidence. . . . Your symptoms, including pain, will be determined to diminish your capacity for basic work activities . . . *to the extent that your alleged functional limitations and restrictions* due to symptoms, such as pain, *can reasonably be accepted as consistent with the objective medical evidence and other evidence.*

20 C.F.R. § 416.929(c)(4) (emphasis added). In considering Rebull's subjective complaints, the ALJ did just that. The ALJ was persuaded by certain portions of Rebull's testimony and other statements of the sort identified in Section II.B.1 *infra.* To the extent other statements by Rebull describing his mental condition and its attendant limitations were accorded less probative weight, this result simply reflects the ALJ's search for consistency and evidentiary support as required by these regulations.

As § 416.929(c)(3) and (c)(4) make clear, the ALJ is obligated only to consider a complainant's subjective complaints, not to accept all of them as dispositive. Having determined that the SSA Decision is supported by substantial evidence, and finding no basis to conclude that the ALJ failed to consider Rebull's subjective complaints, the Court rejects Rebull's claim that the ALJ improperly scrutinized Rebull's subjective complaints.

### III.  *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that Rebull's motion for judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is DENIED; and it is further

**ORDERED** that the Commissioner's motion for judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is GRANTED.

The Clerk of Court is directed to close this case.

**SO ORDERED.**