Ronald E. VEINO, Sr., Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.

Docket No. 01–6202.

United States Court of Appeals, Second Circuit.

Argued: May 10, 2002.

Decided: Dec. 10, 2002.

Arthur P. Anderson, Burlington, VT (Anderson & Buran, Burlington, VT, on the brief), for Plaintiff–Appellant.

Joseph R. Perella, Assistant United States Attorney, Burlington, VT (Peter W. Hall, United States Attorney for the District of Vermont, Paul J. Van De Graaf, Chief, Civil Division, Burlington, VT, Joseph E. Dunn, Assistant Regional Counsel, Boston, MA, on the brief), for Defendant–Appellee.

Before: FEINBERG, KEARSE, and B.D. PARKER, Circuit Judges.

KEARSE, Circuit Judge.

Plaintiff Ronald E. Veino, Sr., who was found by the Social Security Administration ("SSA") to have a disability in 1973 that continued to exist in 1982, entitling him to Social Security Disability Insurance ("SSDI"), appeals from a judgment of the United States District Court for the District of Vermont, Jerome J. Niedermeier, *Magistrate Judge,* dismissing his complaint alleging that defendant Commissioner of Social Security (the "Commissioner") improperly terminated his benefits in January 1998 without proving that his condition had so improved that he was no longer disabled. The magistrate judge, before whom the parties had consented to proceed for all purposes, granted summary judgment in favor of the Commissioner, ruling that there was substantial evidence to support the Commissioner's findings that Veino's condition had improved, that Veino was now capable of performing a number of jobs in the national economy, and that he was therefore no longer disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 401–432 (1994 & Supp. V 1999) (the "Act"). Veino challenges that ruling on appeal, contending principally that the Commissioner failed to present substantial evidence that his medical condition had improved since 1982 because she failed to produce the medical evidence as to his condition in 1982, when the SSA last found him to be disabled.

For the reasons that follow, we agree, and we vacate and remand for further proceedings.

## I. BACKGROUND

Veino first qualified for SSDI benefits in 1973, following his service in the Vietnam War. He suffered from a combination of post traumatic stress disorder, anxiety, and substance abuse disorder. In 1982, the SSA conducted a continuing-disability review and found that he continued to be disabled. He has not engaged in any substantial gainful activity since 1973.

### A. *The Termination of Veino's Benefits*

In 1996, Congress amended the Act to preclude a finding of disability, and an entitlement to benefits, "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In 1997, the SSA commenced another continuing-disability review with respect to Veino. In connection with that review, Veino completed a questionnaire and stated, *inter alia,* that his condition had not changed, that he did not feel that he was able to work, that he performed no household chores and had no social contacts, that he was being treated for nerves and combat fatigue, and that his doctor had not told him he was able to work.

In a letter dated November 17, 1997, the SSA informed Veino that, "[a]fter reviewing all of the information carefully, we've decided that your health has improved since we last reviewed your case," and that his benefits would therefore cease. (SSA Letter to Veino dated November 17, 1997 ("SSA November 1997 Letter" or "Letter"), at 1.) The Letter stated, in part, as follows:

HOW WE MADE THE DECISION

The following reports were used at the time of our original decision to determine that you were disabled:

Steven Goldstein, Ph.D. report of 6/72

University Associates in Neurology, Inc. records of 9/72

VA records of 12/72 to 5/79

University Associates in Psychiatry, Inc. report of 1/75 to 1/81

Franklin Ryan, Ph.D. report of 10/77

Wm. Floyd, Jr. M.D. report of 11/77

Betty Jo Morwood, M.D. report of 9/82

The medical information showed that you were having emotional problems that made it difficult for you to complete a normal workweek.

We are reviewing your case now because that [sic] it was possible your condition would improve.

We used the following reports to decide if you continue to be disabled under our rules:

VA Hospital records of 2/97 to 4/97

Paul Candido, Ph.D. consultative exam dated 9/97

You said that you are still disabled because that [sic] you have problems with your nerves and you have combat fatigue. The new evidence shows that your condition has improved since you were last evaluated. You are able to remember, understand and carry out normal daily activities. You can do a wide range of non stressful work.

(SSA November 1997 Letter at 1.) The SSA concluded: "You are no longer disabled as of Nov. 30, 1997. You will get checks for that month and the next two months. Your last check will be for January 1998." (*Id.* at 2.) The Letter informed Veino that he had the right to seek reconsideration of that determination from a disability hearing officer.

B. *The Decisions of the DHO and the ALJ*

Veino sought reconsideration. The disability hearing officer ("DHO"), in a decision dated April 28, 1998, concluded that Veino was not disabled ("DHO Decision"). The DHO stated that the issues to be determined were whether Veino was disabled and "whether DAA [*i.e.*, drug or alcohol addiction] is a contributing factor material to the finding of disability." (DHO Decision at 1.) The DHO made the following findings:

The hearing officer has reviewed the medical, vocational and other information in the claimant's claims folder pertaining to the issue(s) described above. The hearing officer has also reviewed the testimony and any additional documentary evidence submitted at the disability hearing. After careful consideration of all evidence, the hearing officer makes the following findings:

Claimant was found eligible for continued benefits effective 05/15/73 in the comparison point decision[ ](CPD) of 10/05/92 [*sic*] due to an anxiety disorder, paranoid personality and alcoholism of a severity to meet Listing 12.04A7bB. His benefits were ceased effective 11/97. It was determined that his condition had improved since the comparison point decision[ ](CPD) of 10/05/82 and that he could perform simple low stress work.

At the CPD, evidence shows the claimant was very tense and suspicious. He was agitated with an enormous amount of intense rage and anger just below the surface. His expressed attitude was paranoid in nature, feeling he was being "ripped off" by the world. He was not psychotic and had no delusions or hallucinations. He complained of "combat fatigue" from his tour in Vietnam.[ ] He said he shook a lot in that he trembled constantly. He was ob-

served to have hand tremors at rest on clinical psychological exam. He was oriented to time, place and person. Memory and concentration were intact. He was able to repeat five digits forward and three in reverse. He gave up on serial 7's. He was depressed with insomnia, suicidal and homicidal ideation but no plan. He had migraine headaches occasionally, with some lasting 18 days and not helped by pain medication. He was a loner, would not go into a public place by himself and had little contact with the community. He did have a few friends and one would come to his home to visit. He did no shopping and his wife managed their money. He rarely did household chores. His days were spent mainly watching TV. He did leave the home for his doctor appointments and to cash his check. He had a history of abusing alcohol. On 9/17/92 he denied abuse of alcohol to his treating psychiatrist and admitted use of eight cans of beer a day to a consulting psychologist he saw once. . . .

Currently, claimant continues to complain of combat fatigue with the shakes, not associating with people and feeling uncomfortable leaving the home. He says his condition has essentially not changed in the past 20 years. He has not been in therapy or been on medication for five to six years. There are no symptoms or signs of anxiety on psychological exams. No shaking or tremors are observed. Claimant does report symptoms of agitation and insomnia at night. He will wake up in a cold sweat because of nightmares and will pace the floor. He has suicidal thoughts recently but no plan. He has never attempted suicide. There continues to be no thought disorder, delusions or hallucinations. He is alert and oriented to time, place and person. Concentration and memory are intact. He is able to repeat

six digits forward and four in reverse. He was unable to do serial 7's on minimal effort. Claimant is alcohol and marijuana dependent. He smokes an ounce of marijuana a month and drinks up to a 12 pack of beer a day.

. . . . He seldom leaves the house except for appointments. Once in a while friends will come visit him. He does not drive. He has lost his license due to DWI's. . . .

An analysis of the total evidence establishes that when the claimant is not abusing alcohol and drugs, he would be capable of understanding, remembering and carrying out simple job tasks where contact with others would be minimal in a routine work situation on a sustained basis. He would be able to meet all the basic mental demands necessary to do low stress unskilled work. When abusing drugs and alcohol he is unable to attend work and perform the tasks necessary for simple unskilled work on a sustained basis. Thus he would not be able to meet all the basic mental demands for even unskilled work. . . .

(DHO Decision at 3–4.)

The DHO concluded that "there [had] been medical improvement of [Veino's] impairment(s) since the comparison point decision," stating that

[a]t the comparison point decision[ ](CPD) claimant had severe anxiety such that he trembled constantly and had visible hand tremors. He was very tense, suspicious, and agitated. He was fully oriented. He could remember five digits forward and three in reverse. He was a loner but did have some friends who visited him. He rarely did any household chores. He drank eight cans of beer a day. Currently, claimant reports the shakes and is agitated at night. He exhibits no symptoms or

signs of anxiety on exam. There is no shaking or tremors. He is still fully oriented. He can remember six digits forward and four in reverse. He continues to be a loner and friends still visit him occasionally. He does most of the household chores. He drinks up to a twelve pack of beer a day. Since the symptoms, signs and lab findings show a decrease in the medical severity of the impairment, it is concluded that the claimant's impairment has improved since the CPD.

(*Id.* at 6.) Finding that "[a]t the time of the comparison point decision[ ](CPD), [Veino's] impairment met Listing 12.04," *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and that his "impairment no longer meets that Listing," the DHO "concluded that [Veino's] medical improvement is related to the ability to work." (DHO Decision at 7.)

The DHO also found that Veino's "alcohol and drug condition results in restrictions in concentration, persistence and pace," and that "[s]ince these are work related activities, it is concluded that the claimant has a severe impairment." (*Id.*) The DHO concluded that

the jobs [Veino] could do are severely reduced by his drug and alcohol abuse. He is unable to attend and concentrate and complete a normal work day or workweek on a sustained basis. Thus he would not be able to meet all the basic mental demands necessary to do even unskilled work.

. . . .

Claimant's substance abuse is a contributing factor material to the determination of disability. In the absence of substance abuse, he would be capable of performing a wide variety of unskilled work at all exertional levels.

. . . .

The claimant is found to be: NOT DISABLED[.]

(*Id.* at 10–11.)

Veino sought review of the DHO's Decision; accordingly, a hearing was held before an administrative law judge ("ALJ") in December 1998. Veino, represented by counsel, testified and called his wife as a witness. The ALJ marked as exhibits various documents, including reports from an SSA consultative psychologist and two SSA nonexamining reviewers, and called a vocational expert to testify as to the existence of jobs in the regional and national economy that a person with Veino's characteristics could perform. The ALJ also stated, "[w]e also have the records upon which the determination of disability was made at a prior time" (Hearing Transcript, December 3, 1998 ("Tr."), at 2), but the transcript does not indicate that those prior records were marked as exhibits.

Following the hearing, Veino submitted evidence from his physician, Dr. John Frederick King, M.D. According to Dr. King, who had been Veino's treating psychiatrist since approximately November 1997, Veino suffered from post traumatic stress disorder, anxiety disorder, and repeated intrusive recollections of past traumatic experiences; in addition, Veino probably had a paranoid personality and experienced panic. In response to interrogatories, Dr. King opined, *inter alia,* that Veino's mental condition would interfere with "his ability to carry on normal daily activities[,] . . . his ability to interact appropriately with other individuals (such as family members, friends, neighbors) or to interact and cooperate with others (such as supervisors at work, co-workers, and members of the public)[, and] . . . his ability to concentrate or maintain a persistent pace in completing tasks either at work or in his personal life." (Answers to Interrogatories 6–8.) Dr. King concluded that

"Veino's mental disorders and their symptoms as described above exist independent of any use of alcohol or illegal drugs" (Answer to Interrogatory 10), and that if "Veino were to entirely stop using alcohol or illegal drugs," it was "likely that his mental disorders would persist substantially as described above" (Answer to Interrogatory 11).

In a decision dated May 28, 1999, the ALJ determined that Veino's medical condition had so improved that he was no longer disabled ("ALJ Decision").

> Medical improvement is defined as any decrease in the medical severity of the impairment which was present at the time of the most recent favorable medical decision that the individual was disabled or continued to be disabled. The medical improvement must be related to an ability to work.
>
> . . . .
>
> At the time of the comparison decision dated October 5, 1982 the claimant trembled and had migraines. He did not like being around people and had intense anger. He heard voices and was homicidal. He was oriented and his memory was intact. He was withdrawn, tense and suspicious.

(ALJ Decision at 2, 3.) The ALJ found, however, that those conditions had changed:

> The evidence reveals that the claimant did not require treatment or medication for six years. During a consultative examination his attention and concentration were adequate. He did not demonstrate any unusual motor behavior and had no tremors or shaking. There were no symptoms of post traumatic stress disorder, no symptoms of apprehension or anxiety. . . . The medical evidence shows clear improvement in the claimant's condition. In examinations conducted by Dr. King the claimant was

focused on retaining his Social Security benefits. Dr. King described the claimant as stable on Effexor and Inderol. He is able to function on a daily basis. His condition clearly improved.

(*Id.* at 5.)

The ALJ discounted the other opinions proffered by Dr. King, noting that he had been Veino's treating physician only since November 1997, that his opinions appeared to be based only on statements by Veino rather than on any clinical evidence or any "detailed longitudinal picture of [Veino's] mental condition" (*id.* at 4), and that Dr. King's views were in conflict with those of the SSA's consultative expert. The ALJ found that the statements of Veino himself were "not entirely credible" because he was focused on the loss of his disability benefits. (*Id.* at 5.)

The ALJ found that Veino "continue[d] to have some restrictions and he would be limited from working a jobs [*sic*] involving too much interpersonal contact with the general public, co-workers and supervisors." (*Id.; see also id.* at 7 ("Mr. Veino would be limited to only minimal contact with the general public, co-workers and supervisors.")) The ALJ credited, however, the testimony of the vocational expert, who had "assum[ed] Mr. Veino's specific work restrictions" (*id.*) and had opined that Veino could perform the job of surveillance systems monitor, of which there were 60 in Vermont and New Hampshire, and 8,000 nationally; the job of companion, of which there were 576 in Vermont and New Hampshire, and 80,000 nationally; and the job of night watchman, of which there were 1,620 in Vermont and New Hampshire, and 800,000 nationally.

The ALJ concluded that Veino's medical condition had improved and that Veino could perform the above jobs, although her findings as to the date on which Veino's

disability ceased seem inconsistent. The ALJ's findings include the following:

9. The claimant's ability to perform a full range of medium work is reduced by his inability to have more than limited interactions with the general public, co-workers and supervisors....

. . . .

14. Beginning November 30, 1997 the claimant had the residual functional capacity to perform a full range of medium work, which was reduced by his inability to have more than limited interactions with the general public, co-workers and supervisors....

15. For the period November 30, 1997 to May, 1998 the claimant abused alcohol and marijuana. While drinking he had decreased concentration, persistence and pace, which would have compromised any job base. Therefore, alcohol was a factor material to disability. Absent the alcohol and marijuana abuse his limitations would be consistent with those outlined above, as such the medical evidence establishes that the claimant would not be disabled if he stopped using alcohol and drugs. Therefore in accordance with Section 105 of Pub.L. 104–121, enacted on March 29, 1996, the claimant was ineligible for disability benefits under Title II of the Act.

16. Beginning May, 1998 the claimant's alcohol and drug addiction was in remission and he was able to perform a range of work as outlined above.... [T]here are a significant number of jobs in the national economy which the claimant could perform. Therefore, the claimant is no longer disabled.

17. Alcohol abuse was a contributing factor material to the claimant's disability from November 30, 1997 to May 1, 1998 and he was therefore ineligible for disability benefits.

17. [*sic*] Beginning May 1, 1998 [*sic*] the claimant[ ]'s disability ceased.

### DECISION

It is the decision of the Administrative Law Judge that the claimant's entitlement to ... Disability Insurance Benefits ... ended effective January 31, 1998 the end of the second calendar month after the month in which the disability ceased.

(ALJ Decision at 9–11.)

The SSA Appeals Council denied Veino's request for further review, and the ALJ's decision became the final decision of the Commissioner.

### C. *The Present Action*

Veino commenced the present action, seeking review of the Commissioner's decision. The Commissioner answered, and both sides moved for summary judgment.

The district court noted that, in order to terminate a recipient's disability benefits, the Commissioner is required to show that there has been a medical improvement in the recipient's condition relevant to his ability to work, that the recipient's current condition does not meet the statutory definition of disability, and that the claimant is currently able to engage in substantial gainful activity. The court found that medical reports in the record provided substantial evidence to support the Commissioner's findings concerning Veino's current condition and that the Commissioner had thus adequately shown an improvement in his medical condition. The court granted the Commissioner's motion, denied Veino's motion, and entered judgment in favor of the Commissioner.

This appeal followed.

## II. DISCUSSION

On appeal, Veino argues principally that the Commissioner failed to prove that his medical condition had improved since 1982 because the record contains no medical evidence as to his condition in 1982. We agree and remand for supplementation of the record and for further consideration.

### A. The Challenge to the Record as to Medical Improvement

The district court's review of the Commissioner's decision regarding disability is limited to a determination of whether the decision is supported by "substantial evidence" in the record as a whole. *See* 42 U.S.C. § 405(g); *Mathews v. Eldridge,* 424 U.S. 319, 339 n. 21, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "Substantial evidence" means " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Our statutory mandate as an appellate court is the same as that of the district court. *See, e.g., Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1041 (2d Cir.1984). We conduct a plenary review of the administrative record to determine whether, considering the record as a whole, the Commissioner's decision is supported by substantial evidence. *See, e.g., Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir.2000). Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner.

The Act provides that an individual may be found disabled, and hence entitled to disability benefits, if he has an impairment of such severity as to cause him, for at least 12 months, to be unable to engage in any substantial gainful activity. *See* 42 U.S.C. § 423(d). After an individual has been found entitled to such benefits, his entitlement is to be periodically reviewed, *see* 42 U.S.C. § 421(i), and his benefits may be terminated if there is substantial evidence that the impairment has improved to such an extent that he is now able to work.

> A recipient of benefits ... based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased ... only if such finding is supported by—
>
> (1) substantial evidence which demonstrates that—
>
> > (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
> >
> > (B) the individual is now able to engage in substantial gainful activity. . . .

42 U.S.C. § 423(f)(1). SSA Regulations provide that a

> [m]edical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s). . . .

20 C.F.R. § 404.1594(b)(1). Thus, in order to "determin[e] whether medical improvement has occurred," the SSA must compare "the current medical severity of th[e]

impairment[ ] ... to the medical severity of that impairment[ ] at th[e] time" of the most recent favorable medical decision. *Id.* § 404.1594(b)(7).

■ In the present case, the ALJ received substantial medical evidence as to the current state of Veino's impairments, including current reports from Veino's treating psychiatrist, from one examining consultant, and from two nonexamining reviewers; and the Commissioner has submitted to this Court a lengthy administrative appendix of supporting documents comprising principally the SSA November 1997 Letter, the DHO's 1998 decision, the transcript of the December 1998 hearing before the ALJ, and a score of exhibits received by the ALJ with respect to the review that was commenced in 1997 and Veino's condition in 1998.

However, the record submitted by the Commissioner contains none of the medical evidence with respect to Veino's impairments as they existed when he was found still to be disabled in 1982. Despite the statement by the ALJ at the start of the 1998 hearing, that she "ha[d] the records upon which the determination of disability was made at a prior time" (Tr. 2), she did not mark as a hearing exhibit, or cite in her decision, any medical record that existed at the time of the 1982 decision, and none of those early records are before us. In the absence of the early medical records, the administrative record lacks a foundation for a reasoned assessment of whether there is substantial evidence to support the Commissioner's finding that Veino's 1997–1998 condition represents an "improvement."

The Commissioner argues, relying on 20 C.F.R. § 404.1594(c)(3)(i), that the simple facts that Veino once qualified for a particular impairment in the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and that he is now found not to

qualify for that Listing, proves his medical improvement. We disagree. Section 404.1594(c)(3)(i) itself, which follows a section headed *"Determining if medical improvement is related to ability to work,"* *id.* § 404.1594(c)(2), presupposes medical improvement. It addresses the proper assessment of a recipient's residual functional capacity and the relationship to a given impairment listing *"[i]f medical improvement has occurred."* 20 C.F.R. § 404.1594(c)(3)(i) (emphasis added). This section does not provide a basis for finding improvement.

The Commissioner also argues that the record before us is adequate because the 1982 medical evidence was summarized in the Hearing Officer's decision. (*See, e.g.,* Commissioner's brief on appeal at 16 ("The ALJ ... had before her ... a detailed description of Mr. Veino's mental disorder in 1982.").) And in a May 13, 2002 letter submitted to this Court in response to questioning at oral argument of this appeal, the Commissioner relies on the decisions of the DHO and the ALJ as evidence of Veino's medical condition in 1982. The difficulty with the Commissioner's position is that these decisions are not evidence. The ALJ did not cite or include in the record the 1982 medical evidence itself but only the DHO's summary; and without any of the 1982 medical evidence in the record before us, this Court cannot make a reasoned determination as to whether the DHO's summary is accurate or adequate. Accordingly, the matter will be remanded to the Commissioner for supplementation of the record and for further consideration.

### B. *Other Arguments*

Veino also contends that the decision terminating his benefits should be overturned because (1) the Commissioner failed to give proper weight to the opinions of Dr. King, his treating physician, and (2)

the vocational evidence did not establish that he was capable of substantial gainful activity. Although, in light of our remand for supplementation of the record and reconsideration, we need not resolve these issues now, we note that the second of them is somewhat more persuasive than the first.

While the opinions of a treating physician deserve special respect, *see, e.g., Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980), they need not be given controlling weight where they are contradicted by other substantial evidence in the record, *see, e.g., Bluvband v. Heckler,* 730 F.2d 886, 892–93 (2d Cir.1984); *Ferraris v. Heckler,* 728 F.2d 582, 586 n. 1 (2d Cir. 1984). Genuine conflicts in the medical evidence are for the Commissioner to resolve. *See, e.g., Richardson v. Perales,* 402 U.S. at 399, 91 S.Ct. 1420.

In assessing Veino's current condition, the ALJ credited a small part of Dr. King's evaluation, to wit, the opinion that the medicine prescribed for Veino had stabilized his condition. The ALJ did not credit Dr. King's opinions that, *inter alia,* Veino suffered from post traumatic stress disorder and anxiety disorder that would interfere with his ability to work, irrespective of any addiction to drugs or alcohol. The ALJ stated that she found the latter opinions unpersuasive chiefly because Dr. King's "findings are contrary to findings in the consultative examination and he fails to provide any objective medical evidence to support his findings. The consultative examiner conducted tests to support his conclusions. Dr. King fails to present relevant evidence to support his opinion." (ALJ Decision at 4–5.) The record plainly contained conflicting psychological evaluations of Veino's present condition, and it was within the province of the ALJ to resolve that evidence in the way she did.

The vocational evidence that since 1982 Veino has become able to engage in substantial gainful activity is somewhat more problematic. For example, the DHO's Decision indicated that Veino both was in 1982 and is still wary of "associating with people." (DHO Decision at 3.) And one of the SSA's nonexamining reviewers reported that Veino currently "tends to be wary of others," that he "is quite avoidant of social contact and easily becomes anxious," and that he "is anxious about traveling independently and has limited insight and judgment." That reviewer concluded that Veino's "ability to interact appropriately with the general public" is "Markedly Limited," that category being the most severe degree of limitation envisioned on the SSA evaluation form. The ALJ found that "Mr. Veino would be limited to only minimal contact with the general public, coworkers and supervisors." (ALJ Decision at 7.) Given these circumstances, it would seem difficult to conclude that the ALJ's finding that Veino could work as a "companion" is supported by substantial evidence.

Further, there was substantial evidence that Veino's current condition makes it difficult for him to leave his home to go to a job. (*See, e.g.,* DHO Decision at 3, 4 (Veino complains of "feeling uncomfortable leaving the home.... He seldom leaves the house except for appointments"); *see also id.* at 3 (discussing the 1982 evaluation that Veino "was a loner, would not go into a public place by himself and had little contact with the community.... He did leave the home for his doctor appointments and to cash his check.").) The vocational expert testified that the jobs he identified for Veino, to wit, surveillance systems monitor, companion, and night watchman, could not be performed by a

person who was so uncomfortable leaving his home that he could not function away from home for more than a short period of time. (*See* Tr. 37.) We see no specific finding by the ALJ that Veino now has the emotional ability to work away from home. Given the apparent 1982 medical evidence that Veino lacked that capacity (*see, e.g.,* SSA November 1997 Letter at 1 ("The medical information [in 1982] showed that you were having emotional problems that made it difficult for you to complete a normal workweek.")), and the absence of an express finding by the ALJ that he is emotionally able to work away from home, it is questionable whether the vocational evidence supports the conclusion that Veino is currently able to carry on substantial gainful activity. The status of Veino's current emotional ability to leave home remains to be explored on remand.

## CONCLUSION

In sum, we lack an adequate basis on which to conclude that the Commissioner's finding that Veino's medical condition has improved since 1982 is supported by substantial evidence, because the record does not include the medical evidence as to Veino's condition in 1982. For the reasons discussed above, we vacate the judgment of the district court and the decision of the Commissioner to terminate Veino's benefits, and we remand for supplementation of the record with, and consideration by the ALJ of, the medical records that underlay the 1982 decision that Veino at that time was disabled.