**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MACK E. JACKSON,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

      Defendant-Appellee.

No. 02-5065
(D.C. No. 00-CV-870-J)
(N.D. Oklahoma)

---

**ORDER AND JUDGMENT** *

---

Before **SEYMOUR** , **KELLY** , and **LUCERO** , Circuit Judges.

---

\*   The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mack E. Jackson appeals from the district court's order affirming the Commissioner's determination to terminate his prior award of social security disability benefits. Jackson began receiving disability benefits on June 6, 1995, after an administrative law judge (ALJ) determined that he had been disabled beginning February 15, 1992, from a seizure disorder and alcoholism.

In 1996, Congress amended the Social Security Act to preclude a finding of disability and entitlement to benefits "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Later that year, the Commissioner conducted a continuing-disability review and concluded that Jackson was no longer disabled. Accordingly, the Commissioner proposed to terminate his benefits effective January 1, 1997, the date the grace period for prior adjudicated disability claims expired. See Grigsby v. Barnhart, 294 F.3d 1215, 1217 (10th Cir. 2002).

Jackson obtained a de novo hearing before an ALJ where he was represented by his brother, Morice Jackson, Sr., a non-attorney. In a written decision entered after the hearing, the ALJ determined that Jackson retained the residual functional capacity to perform a full range of work at all exertional levels, limited by his need to avoid exposure to heights, moving machinery, and driving. These limitations precluded him from performing his past relevant work,

but, the ALJ determined, permitted him to perform a significant number of other jobs in the national economy.  Thus, the ALJ concluded that Jackson was no longer disabled.  The Appeals Council   denied review, and the district court affirmed.

We first consider the regulatory framework governing the procedure applied in this case.  A change in the law concerning coverage of alcoholism, rather than an allegation of medical improvement, prompted review of Jackson's case.  Pursuant to the new law, the Commissioner was required to determine which of Jackson's current physical and mental limitations would remain absent his alcohol abuse, and whether the remaining limitations were disabling.  20 C.F.R. § 404.1535(b).[1]   As the record shows that Jackson is not currently drinking, the only issue here is whether he has other physical and mental limitations rendering him disabled under the Social Security Act.[2]

---

[1]    This regulation, dated February 10, 1995, is part of a series of regulations dealing with evaluation of the effect of drug addiction or alcoholism on the determination of disability.  The remaining regulations, §§ 404.1536 through 1541, which permit disability benefits to continue but require treatment, have been superseded by the amendment to 42 U.S.C. § 423(d)(2)(C).  We have continued to apply §   404.1535(b) even after the statutory amendment, however. See, e.g., Bellamy v. Massanari, No. 01-5070, 2002 WL 120532, at **1 (10th Cir. Jan. 30, 2002).

[2]    This case does not involve medical improvement, and the regulations concerning termination of benefits detailed in 20 C.F.R. § 404.1594(f)(1)-(8) therefore do not come into play.  Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000); but see Veino v. Barnhart, 312 F.3d 578, 586-87 (2d Cir. 2002) (applying

(continued...)

Although the regulations are not entirely clear on this point, both parties assume that Jackson's remaining limitations must be evaluated using the five-step sequential procedure set out in § 404.1520 and described in detail in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). Under this framework, the claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751 & n.2. If the claimant successfully meets this burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given his or her age, education and work experience. Id. In the instant case, Jackson was determined disabled at step five, placing the burden on the Commissioner to establish RFC.

We limit our review over the Commissioner's decision to determining whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

_____

[2](...continued)
§ 404.1594 standards to case that addressed continuing disability under § 423(d)(2)(C) amendment in addition to medical improvement issues).

On appeal, Jackson raises three issues, arguing that the ALJ erred by failing: (1) to develop the record properly; (2) to consider all of his impairments; and (3) to perform a proper credibility analysis. Having conducted a careful review of the record, we conclude that substantial evidence supports the ALJ's decision that Jackson is no longer disabled by the impairments that resulted in the initial finding of disability: his seizures are controlled by medication and his alcoholism is in remission. The ALJ erred, however, by failing to take into account other serious impairments with record support that could affect Jackson's ability to perform substantial gainful employment.

In conducting an initial disability determination, the ALJ must examine all of the claimant's impairments that find support in the record. See 20 C.F.R. § 404.1520(a). This is also true of cases involving medical improvement, see id., § 404.1594(a)(5), and it follows that the same is true of reviews conducted pursuant to 42 U.S.C. § 423(d)(2)(C). Jackson has consistently argued that he suffers from serious memory deficits that may impair his ability to perform jobs available in the national economy. Dismissing this claim, the ALJ stated, "[t]here is no evidence of a complaint related to a memory problem." (2 Appellant's App. at 19.) As will be seen, this conclusion is not supported by substantial evidence.

In determining that Jackson was no longer disabled, the ALJ concluded that Jackson could do the full range of work at all exertional levels, limited only by

three non-exertional restrictions: exposure to heights, moving machinery, and driving. When presented with a hypothetical question incorporating only these limited restrictions, the vocational expert (VE) stated that there were many jobs Jackson could perform. Id. at 73. When presented with a second hypothetical, based broadly upon the testimony at the hearing, however, the VE reached a very different conclusion:

> Judge, I don't feel there would be [jobs for Mr. Jackson] on a competitive basis and I'm basing that on the fact of consideration that he is [actually] working in a structured situation with a job coach the way I understood it. He can handle, he seemed to do all right when he's got constant assistance. The stress of going any longer than say four hours seems to, he really deteriorates fast with that, memory and things like that seem to, would be one of the key factors. So I feel like he, he could continue working on a part time basis in the shelter setting, but I don't feel, at least at this time he could work on a competitive basis.

Id. at 73-74.

Of course, the ALJ was required to include in the hypothetical only those impairments that were supported by substantial evidence in the record, Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996); the ALJ elected to follow the VE's response to his first hypothetical question, rather than his second. The question we are faced with here, therefore, is two-fold. First, did the ALJ's first hypothetical question adequately reflect all of Jackson's impairments demonstrated in the record, including his alleged mental impairments? Second,

even if it did, should the ALJ have further developed the record concerning the existence of a mental impairment?

We begin with the uncontested fact that much of Jackson's recent work experience has been in a sheltered workshop environment. (Appellant's App. at 67-68.) This fact would seem to be relevant to the ALJ's analysis of Jackson's residual functional capacity (RFC). Persons who can perform the full range of work in all occupational categories typically do not require a sheltered environment in which to work. The regulations implicitly recognize this by providing special rules for analyzing the claimant's employment in a sheltered work environment. See 20 C.F.R. § 404.1573(c). It is therefore somewhat surprising that the ALJ provided no discussion whatsoever concerning this factor.

Second, we are troubled by numerous references in the record to memory loss and other mental impairments to which the ALJ gave only perfunctory consideration. In his decision, the ALJ gave a list of boilerplate reasons why he did not find Jackson's testimony credible,[3] but did not address the cognitive deficits evident in Jackson's responses, riddled with indications of memory deficits and confusion, to simple autobiographical questions. Additionally, the

---

[3]     Most of these reasons related to disabling pain, an impairment not even presented in this case.

-7-

ALJ said nothing at all about the testimony of Jackson's brother, Morice Jackson,

Sr. Morice Jackson testified, in response to the ALJ's questioning, as follows:

Q. [Mr. Jackson has had no] alcohol for three years?

A. Three years. I'm the one that administered that case but he doesn't remember. But he hasn't had a drink.

Q. So *why is his memory still so bad* (INAUDIBLE)?

A. I don't know why. I went, last month I went to Dr. Dan Schaffer (Phonetic) last month, (INAUDIBLE) of December and there to see Dr. Dan Schaffer and I think from the memory loss he has, he can't remember this and that, he has to take (INAUDIBLE) --

* * *

A. Without me constantly reminding him to do this he'd go home right now, have to go lie down for a couple hours, he, he just stressed out, but you have to do all the things (INAUDIBLE).

(2 Appellant's App. 62-63 (emphasis added).) Later, the ALJ asked Morice:

Q. Do you have anything else you can tell me about your brother's disability?

A. He doesn't drive, I can't afford, I won't let him drive because he don't remember if he know how to start a car and put the reverse, so he doesn't drive, he knows that.

Q. You mean he can't, he can't remember how to drive?

A. . . . [I]f he do drive he may not know how to control or handle it. But he thinks nothing like I have remind him his lunch time, breakfast time, Mack change shirts, change this or do this, I have to constantly monitor him because he just doesn't remember. Mack, it's time to go to work. . . .I have to constantly, Mack, that's too much coffee, two teaspoons, that's too much or I go look for it and I can't

-8-

find it, he misplaced it somewhere and I can't find it.  Things like that.

Q.  Thank you.

Q.  All right.  I think what we need to do is request some of these records that we're missing.

Id. at 69.

Morice Jackson's testimony is not the only evidence of memory loss or mental impairment in the record.  There are many references in the medical record to Jackson's cognitive deficits and mental impairments.  Although many of these references date from the time period before Jackson stopped drinking and had stabilized his seizures with Dilantin, there is nevertheless a strong indication that Jackson may suffer from persistent mental deficits that go beyond his problems with seizures and alcohol.  On February 6, 1993, for example, a physician noted that Jackson had "low intelligence" and lived with his brother.  Id. at 324.  On November 8, 1993, a CT scan of Jackson's brain showed mild atrophy.  Id. at 169.  On February 1, 1994, Dr. Steele examined Jackson and noted that he had "problems thinking and he does not drive."  Id. at 181.  Jackson also complained at that time of blackout spells, headaches and dizziness.  He stated that his seizures had affected his memory.  He seemed confused and had trouble answering questions.  Id.  On March 1, 1994, Dr. Passmore administered a mental status examination, during which Jackson seemed alert but performed poorly on a

test of similarities because he did not understand and kept giving differences instead. Id. at 185. In addition, the record contains troubling reports of head injuries suffered as a result of Jackson's seizure disorder. In June 1994, he fell off a porch and hit his head. Id. at 196. In September 1994, he fell and hit his head on a coffee table. Id. at 323.

After he was granted disability benefits, Jackson sought assistance from the State of Oklahoma Vocational Rehabilitation Services. Although he had stopped drinking and no longer had seizures, his other mental problems evidently persisted. In a disability report dated July 24, 1996, Jackson averred he had difficulty remembering what to do on the job. Id. at 269. He also stated he could not remember what food to buy, and needed assistance shopping. Id. at 264. In connection with his application for rehabilitative services, an appointment was scheduled with a psychologist, on December 19, 1995. Id. at 368. There is no indication in the medical record whether Jackson kept the appointment, or what the psychologist found.[4]

Jackson eventually obtained assistance in finding a position in a sheltered workshop from the Developmental Disabilities Services Division. Id. at 360. A

---

[4]    It appears the ALJ requested this record but it could not be located. (2 Appellant's App. at 378.) Nevertheless, the fact that such an appointment was scheduled is evidence that the rehabilitation service was concerned about Jackson's possible mental impairments.

report from his placement at the Children's Medical Center sheltered workshop indicates that he has trouble controlling his anger and behavior when upset with others. Id. at 372. He was also admonished about his hygiene. Id. at 375.

In short, the record evidence that Jackson may suffer from (1) mental retardation, (2) forgetfulness or memory lapses, (3) residual effects from prior head injuries, and/or (4) difficulties controlling his anger and behavior, raises a serious question as to whether Jackson is capable of performing full-time work that exists in the national economy. None of these deficiencies were evaluated on the Psychiatric Review Technique form completed by the ALJ, presented to the VE in the hypothetical, or discussed with any specificity in the ALJ's decision.

Even if the evidence were insufficient on this record to have required that a specific mental limitation be included in the VE hypothetical, that lack of development itself represents an insufficiency in the record that cannot be attributed to Jackson. First, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). If there are, in fact, additional records that have not yet been obtained and that pertain to Jackson's mental status, the ALJ should take steps to obtain them on remand. Second, there are sufficient references to Jackson's mental limitations "to suggest a reasonable possibility that a severe impairment exists" warranting a

consultative examination "if such an examination is necessary or helpful to resolve the issue of impairment." Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997).

On remand, the ALJ should further develop the record as to any mental impairments, including memory loss, from which Jackson may suffer. The ALJ should adjust his RFC findings and questions to the VE, as appropriate, if required to reflect any information obtained from additional factual development.

The judgment is REVERSED and this case is REMANDED to the district court with instructions to REMAND to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court

Carlos F. Lucero
Circuit Judge