*Bennett v. Comm'r of Soc. Sec.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of January, two thousand twenty-three.

PRESENT:
>           RICHARD J. SULLIVAN,
>           ALISON J. NATHAN,
>           SARAH A. L. MERRIAM,
>                 *Circuit Judges*.

_____

MARIE F. BENNETT,

>           *Plaintiff-Appellant*,

>           v.                                                          No. 22-281

COMMISSIONER OF SOCIAL SECURITY,

>           *Defendant-Appellee*.

_____

For Plaintiff-Appellant:     PATRICK G. RADEL, Getnick Livingston Atkinson & Priore, LLP, Utica, NY.

For Defendant-Appellee:     MOLLY E. CARTER, Special Assistant United States Attorney (Michael J. Pelgro, Regional Chief Counsel – Region I, Office of the General Counsel, Social Security Administration, Boston, MA, *on the brief*), *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Christian F. Hummel, *Magistrate Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Marie F. Bennett appeals from the district court's judgment upholding the denial of her application for disability insurance benefits under the Social Security Act (the "Act"), 42 U.S.C. § 301 *et seq*.   On behalf of the Commissioner of Social Security (the "Commissioner"), an administrative law judge (the "ALJ") found that Bennett was not disabled under sections 216(i) and 223(d) of the Act.   The Appeals Council of the Social Security Administration (the "Appeals Council") affirmed the ALJ's determination and adopted his findings and conclusions in

their entirety. Thereafter, Bennett commenced this action in the district court to seek judicial review of that decision. The district court concluded that the Commissioner applied the correct legal standards and that substantial evidence supported her findings. Bennett timely appealed. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

When the district court upholds the Commissioner's benefits determination, we review *de novo* the administrative record to determine "whether the Commissioner applied the correct legal standard" and "whether there is substantial evidence supporting the Commissioner's decision." *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (internal quotation marks omitted). "The substantial[-]evidence standard means [that] once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (emphasis omitted) (internal quotation marks omitted).

On appeal, Bennett argues that the Commissioner erroneously determined her residual functional capacity ("RFC") by failing to adequately consider her alleged difficulties turning her head and neck and by improperly discounting the

3

opinion of her treating physician. We address each of these two arguments in turn.

First, the Commissioner adequately addressed Bennett's allegations that she had difficulties moving her head and neck, finding that her "statements concerning . . . [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Certified Admin. Record at 88–89. In support of this assessment, the Commissioner cited an MRI result showing only "mild multilevel degenerative disc disease," *id.* at 89; treatment notes indicating that Bennett's neck "pain and stiffness [had] improved . . . with therapy," *id.* at 90; Bennett's representation that she was "able to drive and perform simple household tasks," *id.*, such as "do[ing] laundry," sweep[ing]," and "mop[ping]," *id.* at 88; as well as the fact that Bennett's treatment "ha[d] been generally routine and/or conservative," *id.* at 90. Notwithstanding these findings, Bennett contends that the Commissioner improperly rejected her assertions without adequately considering the opinions of Dr. Elke Lorensen, the Commissioner's consultative expert, and Ms. Mary Barbara, the physician's assistant who treated Bennett. We disagree.

4

The Appeals Council acknowledged that the ALJ did not consider Dr. Lorensen's report because it was "erroneously marked as duplicative evidence." *Id.* at 5. Nevertheless, the Appeals Council found that Dr. Lorensen's findings supported the ALJ's decision, since they confirmed that Bennett was able to do a wide range of daily activities, showed full cervical flexion and extension, and indicated that she had only mild limitations in turning her head sideways. *See id.*; *see also id.* at 602; 20 C.F.R. § 404.979 ("After it has reviewed all the evidence in the [ALJ's] hearing record and any additional evidence received, . . . the Appeals Council will make a decision or remand the case to an [ALJ]," and "[i]f the Appeals Council issues its own decision, it will base its decision on the preponderance of the evidence."). As to Ms. Barbara – the physician's assistant who treated Bennett – the ALJ assigned "little weight" to her opinions because "the objective medical evidence . . . d[id] not support them." Certified Admin. Record at 90–91. For instance, the ALJ noted that Ms. Barbara's opinion that Bennett could "rarely turn her head" was contradicted by Bennett's report of "going to a water safari where she road some rides," as well as by Ms. Barbara's own treatment note suggesting that Bennett "ha[d] [a] full range of motion." *Id.* at 91 (citing *id.* at 442). On this record, a "reasonable factfinder"

5

could agree with the Commissioner's RFC determination concerning Bennett's ability to move her head and neck.   *Schillo*, 31 F.4th at 74.

Second, the Commissioner properly discounted the opinion of Bennett's treating physician, Dr. Adekola Alao.   When "determining the appropriate weight to assign a treating physician's opinion," the ALJ first "must decide whether the opinion is entitled to controlling weight."   *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).   A treating physician's opinion will be assigned controlling weight "so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id.* (alteration and internal quotation marks omitted).   If the ALJ determines that the opinion is *not* entitled to controlling weight, then the ALJ "must determine how much weight, if any, to give it," after considering the following "nonexclusive" factors:   "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."   *Id.*

at 95–96 (alteration and internal quotation marks omitted).[1]  "If the Commissioner has not otherwise provided good reasons for [her] weight assignment, we [may] . . . remand for the ALJ to comprehensively set forth [his or her] reasons." *Id.* at 96 (alterations added) (internal quotation marks omitted).  But if "a searching review of the record assures us that the substance of the treating[-]physician rule was not traversed, we will affirm." *Id*. (internal quotation marks omitted); *see also Schillo*, 31 F.4th at 75 (explaining that a treating physician's opinion will not be given controlling weight if it is not "well supported by medically acceptable . . . diagnostic techniques" or is "inconsistent with (or contradicted by) other substantial evidence in the . . . case record").

Here, the Commissioner acknowledged that Dr. Alao's opinion constituted "a treating acceptable medical source," but provided good reasons for giving Dr. Alao's opinion "limited weight."  Certified Admin. Record at 91. Specifically, the Commissioner pointed out that Dr. Alao "had only been treating [Bennett] for six months," that "medical evidence of record d[id] not support"

---

[1] The Social Security Act and the regulations applicable to the evaluation of medical opinion evidence were amended effective March 27, 2017.  "For claims filed before March 27, 2017 (as is the case here), the agency must apply 20 C.F.R. § 404.1527."  *Schillo*, 31 F.4th at 70; *see also* 20 C.F.R. § 404.1527(c).

Dr. Alao's findings, and that Dr. Alao's conclusion that Bennett experienced "significant limitations" due to "short-term memory loss" was inconsistent with other providers' examination results demonstrating that Bennett had "intact or only mildly impaired memory." *Id.*

Our "searching review" of the record corroborates the Commissioner's determination. *Estrella*, 925 F.3d at 96 (internal quotation marks omitted). For instance, contrary to Dr. Alao's assessment that Bennett could not "[u]nderstand and remember very short and simple instructions" or "[c]arry out" such instructions, Certified Admin. Record at 386, treatment records from other healthcare providers reflected that Bennett's "[m]emory [was] grossly intact," *id.* at 276; that her "[c]ognitive functioning was normal," *id.* at 436; that "[n]o disorientation" or "confusion was observed," *id.* at 317; and that she reported "[n]o dizziness," "vertigo," "fainting," "anxiety," "depression," or "sleep disturbances," *id.* at 413.

Bennett nevertheless asserts that the Commissioner failed to adequately explain her rejection of Dr. Alao's conclusion that Bennett could not maintain a consistent work schedule despite that conclusion's alleged consistency with other evidence. This aspect of Bennett's argument seeks an impermissible reweighing

8

of the evidence. Although there is some evidence in the record that could support Bennett's position, "whether there is substantial evidence supporting [Bennett]'s view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision.*" *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). The record here reflects that there was substantial evidence to support the ALJ's finding that Bennett was not as limited in her ability to maintain a regular work schedule as Dr. Alao opined.

As a threshold matter, Dr. Alao offered no explanation for his opinion regarding Bennett's ability to maintain a work schedule. *See* Certified Admin. Record at 386. The RFC questionnaire asked Dr. Alao to explain Bennett's mental limitations and provide "medical/clinical findings that support [his] assessment." *Id.* Dr. Alao left that space blank, and elsewhere on the questionnaire, he listed only "short term memory loss" as the "*clinical findings . . .* that demonstrate the severity" of Bennett's impairment. *Id.* at 384. Contrary to Dr. Alao's conclusory assessment, the record reflects many psychiatric and neurological examinations that yielded normal results, including some reflecting that Bennett had intact memory. *See, e.g., id.* at 286, 309, 317–18, 328, 422, 436, 442. Other medical professionals found Bennett to have only mild limitations in maintaining a

9

schedule, *see id.* at 75, 348–50**,** which support, rather than undermine, the ALJ's decision to discount the portion of Dr. Alao's opinion finding that Bennett was *significantly* limited in that domain.[2]

Although neither the ALJ nor the Appeals Council offered explicit reasons for discounting the portion of Dr. Alao's opinion addressing Bennett's ability to maintain a consistent schedule, both adequately explained the reasons for assigning the opinion limited or little weight.   Bennett points to no case requiring that an ALJ explain the weight afforded to every issue discussed in a treating physician's opinion.   *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("[W]e do not require that [the agency] . . . mention[] every item of testimony presented to [it] or . . . explain[] why [it] considered particular evidence unpersuasive or insufficient to lead [it] to a conclusion.").   In sum, because the Commissioner provided "good reasons" for her decision to give Dr. Alao's opinion little weight, and because "a searching review of the record assures us that

---

[2] To the extent other medical opinions might support additional non-exertional limitations in the RFC, the Commissioner must formulate her RFC determination based on the entire record, not just the medical opinions.   *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018) ("Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, however, the ALJ was entitled to weigh all of the evidence available to make a residual functional capacity finding that was consistent with the record as a whole.").   Here, the Commissioner's RFC determination is adequately supported by the record as a whole.

the substance of the treating[-]physician rule" was not compromised, *Estrella*, 925 F.3d at 96 (internal quotation marks omitted), we cannot agree with Bennett's contention that "[r]emand is required" because the Commissioner "did not properly apply the treating physician's rule when considering Dr. Alao's assessment," Reply Br. at 18.

We have considered all of Bennett's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11