**Paul A. SCHLICHTING, Plaintiff,**

v.

**Michael J. ASTRUE, Comm'r of Soc. Sec., Defendant.**

**Civil Case No. 5:11–CV–302 (GTS/VEB).**

United States District Court, N.D. New York.

Signed Sept. 11, 2012.

---

194

Law Offices of Steven R. Dolson, Steven R. Dolson, Esq., of Counsel, Syracuse, NY, for Plaintiff.

Social Security Administration, Office of Regional General Counsel—Region II, Katrina M. Lederer, Esq., of Counsel, New York, NY, for Defendant.

### MEMORANDUM–DECISION and ORDER

GLENN T. SUDDABY, District Judge.

Currently before the Court, in this action filed by Paul A. Schlichting ("Plaintiff") against Social Security Commissioner Michael J. Astrue ("Defendant") pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) seeking supplemental social security income benefits ("SSI") and disability insurance benefits ("DIB"), are the following: (1) Plaintiff's motion for judgment on the pleadings (Dkt. No. 11); (2) Defendant's motion for judgment on the pleadings (Dkt. No. 13); (3) the Report–Recommendation of United States Magistrate Judge Victor E. Bianchini, issued pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 72.3(c) of the Local Rules of Practice for this Court recommending that Defendant's motion be granted, Plaintiff's motion be denied, and this action be dismissed in its entirety (Dkt. No. 15); (4) Plaintiff's Objections to the Report–Recommendation (Dkt. No. 16); and (5) Defendant's Response to Plaintiff's Objections (Dkt. No. 17.). For the reasons set forth below, Magistrate Judge Bianchini's Report–Recommendations is accepted and adopted in its entirety.

## I. RELEVANT BACKGROUND

### A. Procedural History

Because neither party has objected to Part II of Magistrate Judge Bianchini's Report–Recommendation, which correctly sets forth the procedural background of this action, the Court adopts that part's description of this action's procedural background for purposes of this Decision and Order, which is intended primarily for the review of the parties. (*See generally* Dkt. No. 15, at Part II [Report–Rec].) The Court would add only the following brief summary of the case's procedural history.

■ On December 11, 2007, Plaintiff applied for SSI and DIB under the Social Security Act alleging a disability onset date of December 12, 2004. (*See* Administrative Transcript ["T."] at 93–104.)[1] Plaintiff's application was initially denied by the Social Security Administration. Thereafter, Plaintiff appealed from the decision; and on September 14, 2009, a hearing was held before an Administrative Law Judge ("ALJ") of the Social Security Administration. (T. at 25–41.)

On October 28, 2009, the ALJ issued his decision denying Plaintiff's application for benefits. (T. at 12–20.) In his decision, the ALJ determined that Plaintiff did not have an impairment of combination of impairments which meet or medically equal any of the listed impairments pursuant to 20 C.F.R. Part 404(P)(1). (T. at 15–16.)

On January 26, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of Defendant. (T. at 1–6.) On March 17, 2011, Plaintiff commenced this action in this Court. (Dkt. No. 1.)

Generally, in his motion, Plaintiff asserts the following four arguments: (1) the ALJ erred by failing to give controlling weight

---

1. "To be eligible for disability insurance benefits, a claimant must establish an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has last-ed or can be expected to last for a continuous period of not less than 12 months.'" *Dixie v. Comm'r of Soc. Sec.*, 05–CV–0345, 2008 WL 2433705 at *7 (N.D.N.Y. June 12, 2008) (Mordue, J.) (citation omitted).

to the medical opinion of Plaintiff's treating physician; (2) the ALJ erred by failing to properly assess Plaintiff's credibility; (3) the ALJ erred by failing to consider the Plaintiff's Global Functioning Assessment ("GAF") score; and (4) the ALJ failed to recognize Plaintiff's alcohol recovery counseling qualified as mental health treatment. (Dkt. No. 11.)

Generally, in his motion, Defendant disagrees with each of these arguments, and argues that the Commissioner's decision should be affirmed. (Dkt. No. 13.)

### B. Magistrate Judge Bianchini's Report–Recommendation

Generally, in his Report–Recommendation recommending that Defendant's decision denying Plaintiff Social Security benefits be affirmed and that Plaintiff's Complaint be dismissed, Magistrate Judge Bianchini found as follows: (1) the ALJ correctly determined, based on substantial record evidence, that the opinion of Plaintiff's treating physician should not be given controlling weight as the treating physician was not a specialist in mental health and the duration of treatment relationship was limited to six visits; (2) as to Plaintiff's credibility assessment, the ALJ correctly determined that Plaintiff's claims of debilitating pain were inconsistent with evidence in the record; (3) the ALJ's failure to note Plaintiff's GAF score does not amount to reversible error, because substantial evidence in the record supported Plaintiff's Residual Functional Capacity ("RFC") assessment; and (4) the ALJ's RFC assessment is supported by substantial evidence. (Dkt. No. 15, at Part III.C.)

### C. Plaintiff's Objections to the Report–Recommendation

Generally, in his Objection to the Report–Recommendation, Plaintiff asserts the following three arguments: (1) as Plaintiff argued in his underlying motion for judgment on the pleadings, the ALJ did not properly apply the treating physician rule, the ALJ did not properly assess claimant's credibility, the ALJ improperly failed to consider a GAF score, and the ALJ mischaracterized the nature of Plaintiff's alcohol counseling; (2) with regard to the ALJ's credibility determination, the ALJ erred in assessing Plaintiff's credibility, because the ALJ must not draw an "adverse inference" from a claimant's failure to seek treatment without considering other evidence in the record and/or the claimant's explanations for that failure; and (3) the ALJ should have given the opinion of Plaintiff's treating physician controlling weight, or at the very least more than "little weight," because that opinion is supported by medical evidence and is not internally inconsistent. (Dkt. No. 16.)

### D. Defendant's Response to Plaintiff's Objection

Generally, in his response to Plaintiff's Objection, Defendant argues as follows: (1) in his Objection, Plaintiff's restatement of his underlying arguments is impermissible, because he is not entitled to "another bite at the apple"; and (2) as to Plaintiff's credibility assessment, Plaintiff's failure to pursue mental health treatment was only part of the ALJ's credibility assessment, and Plaintiff's testimony was inconsistent with the medical examiners' opinions and unsupported by record evidence. (Dkt. No. 17.)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard Governing Review of Magistrate Judge Bianchini's Report–Recommendation

██ When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that

portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[2] When performing such a *de novo* review, "[t]he judge may . . . receive further evidence. . . ." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[3]

■ When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition.[4] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[5] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee

2. *See also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

3. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz*, 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to

construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

4. *See also Brown v. Peters*, 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir.1999).

5. *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan*, 806 F.Supp. 380, 382 (W.D.N,Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 728 F.Supp.2d 168, 172 & n. 3 (N.D.N.Y.2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[6]

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## B. Standard Governing Review of Defendant's Decision

Because neither party has objected to Part III.A. of Magistrate Judge Bianchini's Report–Recommendation, which correctly recites the legal standard governing judicial review of Defendant's decision, the Court adopts that part's recitation of that legal standard for purposes of this Decision and Order, which (again) is intended primarily for the review of the parties. (*See generally* Dkt. No. 15, at Part III.A. [Report–Rec].)

## III. ANALYSIS

As an initial matter, the Court finds that the majority of Plaintiff's arguments in his Objection (i.e., the first and third arguments described above in Part I.C. of this Decision and Order) fail to specifically address Magistrate Judge Bianchini's Report–Recommendation. Instead, those arguments merely reiterate the arguments that Plaintiff made to Magistrate Judge Bianchini. For the reasons explained above in Part II.A of this Decision and Order, the Court need review the portions of the Report–Recommendation challenged by these arguments only for clear error. After carefully reviewing those portions of the Report–Recommendation, the Court

concludes that they are free from clear error. (Dkt. No. 15.) The Court would only add that Plaintiff's arguments would survive even a de novo review.

Turning to the argument in Plaintiff's Objection that does specifically address Magistrate Judge Bianchini's Report–Recommendation (i.e., the second argument described above in Part I.C. of this Decision and Order), the Court has carefully reviewed those portions of the Report–Recommendation challenged by those arguments, and has found them to be correct in all respects. In those portions of his Report–Recommendation, Magistrate Judge Bianchini employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (*Id.*) As a result, the Court accepts and adopts the Report–Recommendation in its entirety for the reasons stated therein, and for the reasons stated in Defendant's response to Plaintiff's Objections. (*Id.; see also* Dkt. No. 17.)

The Court would add only one point. As Magistrate Judge Bianchini correctly stated in his Report–Recommendation, the ALJ's reference to Plaintiff's failure to pursue mental health treatment was only part of his credibility determination. (Dkt. No. 15, at 16.) Because the ALJ's overall credibility determination is indeed supported by substantial evidence, Magistrate Judge Bianchini correctly determined that the credibility determination should be upheld. (*Id.*) As Magistrate Judge Bianchini correctly stated, Plaintiff's testimony was "inconsistent (in part)" with the opinion of his treating physician, and "contradicted" by the opinions of the consultative examiner and State Agency review consultant. (*Id.* at 14, 16.) Further, Plaintiff's testi-

---

**6.** *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

mony was largely not supported by contemporaneous treatment notes or clinical findings. (*Id.* at 16.) As a result, the ALJ's error with regard to Plaintiff's treatment level was indeed harmless, and does not provide a basis for disturbing the decision. (*Id.*)

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Bianchini's Report–Recommendation (Dkt. No. 15) is *ACCEPTED* and *ADOPTED* in its entirety; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is *DENIED;* and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is *GRANTED;* and it is further

**ORDERED** that Defendant's decision denying benefits is *AFFIRMED;* and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *DISMISSED.*

## REPORT AND RECOMMENDATION

VICTOR E. BIANCHINI, United States Magistrate Judge.

### I. INTRODUCTION

In December of 2007, Plaintiff Paul A. Schlichting applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he had been unable to work since December of 2004 due to various psychological and emotional impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff commenced this action by and through his attorney, Steven R. Dolson, Esq., seeking judicial review of the Com-

missioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

### II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB under the Social Security Act on December 11, 2007, alleging disability beginning on December 12, 2004. (T at 93–95, 96–104).[1] The claims were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Syracuse, New York on September 14, 2009, before ALJ John P. Ramos. (T at 21). Plaintiff, represented by Attorney Dolson, appeared and testified. (T at 25–41). On October 28, 2009, ALJ Ramos issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T at 12–20). The ALJ's decision became the Commissioner's final decision on January 26, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1–6).

Plaintiff, by and through his attorney, timely commenced this action on March 17, 2011. (Docket No. 1). The Commissioner interposed an Answer on August 25, 2011. (Docket No. 9). Plaintiff filed a Brief in support of his action on October 7, 2011. (Docket No. 15). Defendant filed a Brief in opposition on November 4, 2011. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if

---

1. Citations to "T" refer to the Administrative Transcript. (Docket No. 9).

both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that this case be dismissed.

## III. DISCUSSION

### A. Legal Standard

■ A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir.1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

■ "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).

■ If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. *See* 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in *Bowen v. Yuckert*, 482 U.S. 137, 140–142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

**2.** General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

**3.** This five-step process is detailed as follows: First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an im-

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. *See Bowen*, 482 U.S. at 146 n. 5, 107 S.Ct. 2287; *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B. Analysis

### 1. Commissioner's Decision

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2009. The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 10, 2004, the alleged onset date. (T at 14).

The ALJ concluded that Plaintiff had the following impairments, which the ALJ considered "severe," as defined under the Act: alcoholism, anxiety, and depression. (T at 14–15). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 15–16).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels. (T at 17). The ALJ determined that Plaintiff could (on a sustained basis) understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. (T at 17–19). However, the ALJ found that Plaintiff could not perform his past relevant work as a cost estimator and draftsman, because those jobs required concentration beyond Plaintiff's residual functional capacity. (T at 19).

Considering Plaintiff's age (44 years old as of the alleged onset date), education (high school), work experience, and residual functional capacity, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (T at 19). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from December 1, 2004 (the alleged onset date) through October 28, 2009 (the date of decision), and was therefore not entitled to benefits. (T at 20). As noted above, the ALJ's decision became the Commissioner's final decision on January 26, 2011, when the Appeals

---

pairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Council denied Plaintiff's request for review. (T at 1–6).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. Plaintiff offers four (4) principal arguments in support of his position. First, Plaintiff contends that the ALJ did not properly apply the treating physician's rule. Second, Plaintiff challenges the ALJ's credibility determination. Third, Plaintiff argues that the ALJ improperly failed to consider a Global Functioning Assessment ("GAF") score. Fourth, Plaintiff asserts that the ALJ mischaracterized the nature of his alcohol counseling. This Court will address each argument in turn.

### a. Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000).[4]

 Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) sup-

portability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. 20 C.F.R. § 404.1527(d)(1)–(6); *see also de Roman*, 2003 WL 21511160, at *9; *Shaw*, 221 F.3d at 134; *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998); *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir.1998).

 In the present case, Dr. Catherine Keating, Plaintiff's treating family care doctor, opined that Plaintiff had marked restrictions in his activities of daily living; marked limitations with regard to maintaining social functioning; deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; repeated episodes of deterioration or decompensation in work or work-like settings; and a complete inability to function independently outside the area of his home due to panic attacks. (T at 286–87).

The ALJ found Dr. Keating's assessment to be of "little evidentiary value" and afforded it "little weight" when determining Plaintiff's residual functional capacity. (T at 19). For the reasons that follow, this Court finds the ALJ's assessment to be consistent with applicable law and supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420.

First, a treating physician's opinion is entitled to greater weight when he or she is a specialist with regard to the area at issue and where he or she has an extensive treating relationship with the claimant. 20 C.F.R. § 404.1527(d)(2) & (5). Here, Dr. Keating is a family physician (as opposed to a psychiatrist or psychologist) and her

**4.** "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." *de Roman v. Barnhart*, No. 03Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

treating relationship was limited to four visits in 2007 and two visits in 2009. (T at 204–211, 289–293). In addition, it appears that Plaintiff was seen exclusively by a nurse practitioner (as opposed to Dr. Keating) on each of those occasions. (T at 204–211, 289–293).

Second, when considering the "supportability" of a treating physician's opinion, the ALJ asks whether the opinion is supported by "medical signs and laboratory findings." In addition, the ALJ considers the adequacy of the physician's explanation for his or her opinion. 20 C.F.R. § 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Here, Dr. Keating's assessment was not supported by any medical signs or laboratory findings. In fact, the treatment notes prepared by the nurse practitioner working in collaboration with Dr. Keating referenced Plaintiff's problems with depression, anxiety, and alcohol, but generally described Plaintiff's condition as "stable" and "good" (T at 205, 206, 209, 210).[5]

In addition, the treating physician's opinion was internally inconsistent. For example, Dr. Keating assessed that Plaintiff had a complete inability to function independently outside of his home due to panic attacks. (T at 287). However, she also opined that Plaintiff was not significantly impaired with regard to his ability to sustain an ordinary routine without special supervision, make simple work-related decisions, and respond appropriately to changes in the work setting outside the home. (T at 287–88). Dr. Keating found a marked limitation in terms of social functioning (T at 286), but assessed no significant impairment with respect to Plaintiff's ability to get along with peers without

distracting them or exhibiting behavioral extremes and his ability to maintain socially appropriate behavior. (T at 288). Dr. Keating concluded that Plaintiff had a marked impairment with regard to performing activities within a schedule; but no significant impairment in terms of sustaining an ordinary routine without special supervision or carrying out detailed instructions. (T at 287). These serious inconsistencies reasonably caused the ALJ to question the supportability of Dr. Keating's conclusions.

Third, additional support for the ALJ's decision to discount Dr. Keating's opinion is found in the assessments rendered by the consultative examiner and State Agency review consultant. Dr. Noia, the consultative examiner, found Plaintiff capable of understanding and following simple instructions and directions; performing simple and some complex tasks with supervision and independently; maintaining attention and concentration for tasks; learning new tasks; making appropriate decisions; and interacting moderately well with others. (T at 219). Dr. Noia did note a history of difficulties managing stress, but found that Plaintiff could attend to a routine and maintain a schedule. (T at 219).

Dr. Hochberg, the State Agency review consultant, reviewed the medical record and assessed a mild degree of restriction with regard to activities of daily living and social functioning, along with moderate difficulties in terms of maintaining concentration, persistence, or pace. (T at 231). Dr. Hochberg and Dr. Keating (the treating physician) reached the same conclusion regarding several material aspects of Plaintiff's residual functional capacity. For ex-

**5.** One note appears to indicate that Plaintiff was working 15–20 hours (T at 206), which is consistent with Plaintiff's testimony that he worked 10 to 15 hours per month drafting technical documents. (T at 30–31).

ample, both found that Plaintiff was not significantly limited in terms of his ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple directions; sustain an ordinary routine without special supervision; and make simple work-related decisions. (T at 235–36, 287).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); *see also Leach ex rel. Murray v. Barnhart*, No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Moreover, "[c]onflicts in evidence ... are for the Commissioner to resolve." *White v. Comm'r of Social Security*, No. 06–CV–0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." *Id.* (citing *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002)).

Plaintiff argues that the ALJ should have re-contacted Dr. Keating before discounting her opinion. However, the administrative record already included the treatment notes from all of Plaintiff's visits (totaling six visits over the course of three years) to Dr. Keating's office (T at 204–211, 289–293). In addition, the ALJ held the record open following the administrative hearing to provide for the submission of additional evidence from Dr. Keating. (T at 24). In addition to the evidence from Dr. Keating and her office, the record includes Dr. Noia's consultative examination report, the State Agency review consultant's assessment, records from Plaintiff's inpatient hospitalizations, and treatment notes from Plaintiff's alcohol counseling.

While an "ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record, ... where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999).

Indeed, the ALJ's responsibility to resolve conflicts in the evidence would be "rendered nugatory if, whenever a treating physician's stated opinion is found to be unsupported by the record, the ALJ were required to summon that physician to conform his [or her] opinion to the evidence." *Rebull v. Massanari*, 240 F.Supp.2d 265, 273 (S.D.N.Y.2002); *see also Harvey v. Astrue*, 05–CV–1094, 2008 WL 4517809, at *8 (N.D.N.Y. Sep. 29, 2008) ("An ALJ need not seek further explanation from treating physicians each time there is an inconsistency in medical opinions.").

Accordingly, this Court finds that the ALJ was not required to re-contact Dr. Keating, that the ALJ properly applied the treating physician's rule, and that the ALJ's decision to discount Dr. Keating's opinion was supported by substantial evidence.

### b. Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. *See Ber v. Celebrezze,* 332 F.2d 293 (2d Cir.1964). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. *See Brandon v. Bowen,* 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 96–7p; *Gernavage v. Shalala,* 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel,* 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96–7p:

First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . .

Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. . . .

According to 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii) and 416.929(c)(3)(i)–(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;

2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;

3. Precipitating and aggravating factors;

4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;

5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

6. Any measure [Plaintiff] use[s] or ha[s] used to relieve . . . pain or other symptoms;

7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Young v. Astrue,* No. 7:05–CV–1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting *Brandon v. Bowen,* 666 F.Supp. 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that he lacks energy and has trouble sleeping

when depressed and has difficulty interacting with others when anxious. (T at 25). Plaintiff stated that his spells of anxiety occur several times per week, with severity such that he cannot function or interact with others. (T at 25). Plaintiff does have a consistent work record (T at 144) and was therefore entitled to enhanced credibility. *See Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir.1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limited effects of those symptoms were not entirely credible. (T at 17–18). This Court finds the ALJ's credibility assessment consistent with applicable law and supported by substantial evidence.

Plaintiff's testimony concerning the impact of his episodes of anxiety on his ability to interact with others was contracted by Dr. Noia, the consultative examiner, who opined that Plaintiff could "relate to and interact moderately well with others." (T at 219). The State Agency Review consultant reached a similar conclusion. (T at 231). Plaintiff's treating physician reached contradictory conclusions on this point, finding on the one hand that Plaintiff's ability to interact with the general public was markedly impaired; but also concluding that Plaintiff was not significantly impaired with regard to getting along with peers and co-workers, accepting instruction and criticism from supervisors, and maintaining socially appropriate behavior. (T at 287–88).

Plaintiff also testified to a variety of activities of daily living that involved at least some social interaction and the ability to maintain a regular schedule (including part-time employment, maintaining family relationships, and attendance at Alcoholics Anonymous meetings) (T at 30–31, 34, 136). The ALJ reasonably concluded that these activities were inconsistent with Plaintiff's allegations of disabling symptoms.

 "It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. *See Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir.1999) (citing *Pascariello v. Heckler*, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir.1999).

In further support of his decision to discount Plaintiff's credibility, the ALJ noted that Plaintiff treated his mental health problems with prescription medication and attended AA meetings for his alcoholism, but did not seek "out-patient mental health treatment other than attendance at counseling for alcohol abuse." (T at 18). Plaintiff argues that the ALJ erred because his alcohol abuse counseling, which delves into the underlying problems giving rise to Plaintiff's alcohol dependence should have been considered a form of mental health treatment. As a threshold matter, to the extent Plaintiff argues that the ALJ did not consider alcohol

abuse counseling a form of mental health treatment, that argument is inconsistent with the ALJ's actual language. Specifically, the ALJ found that Plaintiff did not seek "out-patient mental health treatment other than attendance at counseling for alcohol abuse," (T at 18) (emphasis added), indicating that he did consider the counseling at least some form of mental health treatment.

The Court does find that the ALJ erred in considering Plaintiff's failure to seek outpatient mental health treatment other than alcohol abuse counseling. SSR 96–7p provides, in relevant part, that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed." Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.* The record in this case does not indicate that the ALJ considered any explanation Plaintiff might have for failing to seek other treatment. Further, faulting a person with diagnosed mental illness for failing to pursue mental health treatment is a "questionable practice." *See Day v. Astrue,* No. 07 CV 157, 2008 WL 63285, at *5 n. 6 (E.D.N.Y. Jan. 3, 2008) (noting that it "is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (quoting *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir.1996) and citing *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989)).

Nevertheless, the ALJ's error was harmless. The reference to Plaintiff's failure to pursue treatment other than alcohol counseling was only part of the ALJ's credibility assessment. The overall decision to discount Plaintiff's allegations is supported by substantial evidence even excluding consideration of the level of treatment. As outlined above, Plaintiff's testimony was inconsistent (in part) with the opinions of his treating physician, the consultative examiner, and the State Agency review consultant, and was largely not supported by contemporaneous treatment notes or clinical findings. Accordingly, the ALJ's error with regard to Plaintiff's treatment level was harmless and does not provide a basis for disturbing the decision. *See Duvergel v. Apfel,* No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar. 29, 2002); *Walzer v. Chater,* 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept. 26, 1995) (finding that ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome); *see also Curry v. Sullivan,* 925 F.2d 1127, 1129 (9th Cir.1996) (holding that harmless error rule applies to review of denial of disability benefits).

In conclusion, the Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. *See e.g. Mimms v. Heckler,* 750 F.2d 180, 186 (2d Cir.1984). The ALJ's credibility determination should therefore be upheld.

### c. GAF Score

During a November 2006 hospitalization, Plaintiff was assigned a Global Assessment Functioning ("GAF") score of 50. (T at 189). "A GAF range of 41–50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'" *Pollard*

*v. Halter,* 377 F.3d 183, 186 n. 1 (2d Cir. 2004). Plaintiff correctly notes that the ALJ did not expressly reference this GAF score in his decision.

However, the failure to reference this single score, which was assessed when Plaintiff was hospitalized due to a serious alcohol abuse incident, does not amount to reversible error. The ALJ is not required to specifically discuss each piece of evidence considered. *Barringer v. Comm'r,* 358 F.Supp.2d 67, 78–79 (N.D.N.Y.2005) (noting that an ALJ's failure to cite specific evidence does not mean it was not considered) (citing *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir.2000)). Moreover, although the ALJ may rely on a GAF score, the failure to reference a single such score, without more, is not a ground of remand. *See Parker v. Comm'r of Social Security,* No. 10–CV–195, 2011 WL 1838981, at *6 (D.Vt. May 13, 2011) (citing *Kornecky v. Comm'r of Soc. Sec.,* 167 Fed.Appx. 496, 511 (6th Cir.2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score.")). Lastly, the ALJ's overall RFC assessment is supported by substantial evidence (as outlined above), including the consultative examiner's report and Plaintiff's admissions concerning his activities of daily living. As such, this Court finds no reversible error with regard to the ALJ's failure to discuss the GAF score.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consulta-tive examiners, and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

## V. ORDERS

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDA-TION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTEN-SION OF TIME TO FILE OBJEC-TIONS, WAIVES THE RIGHT TO AP-PEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CON-TAINED HEREIN.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d Cir.1995); *Wesolek v. Cana-dair Ltd.,* 838 F.2d 55 (2d Cir.1988); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not,* presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

SO ORDERED.

July 17, 2012.